UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: LESLIE A. FINCHER,                                    No. 13-08-11454 JA

Debtor.

# MEMORANDUM OPINION

THIS MATTER is before the Court on the Second Application for Allowance and Payment of Compensation and Reimbursement of Expenses and Costs ("Fee Application") filed by Hunt & Davis, P.C. (Chris W. Pierce and Leslie Maxwell), counsel for Leslie A. Fincher (the Debtor or Ms. Fincher). *See* Docket No. 82. The Fee Application requests the Court to allow, as a priority, administrative expense, compensation in the amount of $7,219.80 for the period beginning July 1, 2008 through September 19, 2011.[1] Of this amount, the Law Firm has charged $6,666.00 for legal fees, $107.83 for costs, and $445.87 for gross receipts taxes. Ms. Fincher filed an objection to the Fee Application, asserting, among other things, that the fees requested in the Fee Application should be denied because they are excessive. *See* Objection to Fees Claimed by Attorney Chris Pierce ("Objection") – Docket No. 93.[2] The Court held a final evidentiary hearing on the Fee Application and the Debtor's Objection on January 11, 2012 and took the

---

[1] The Court previously approved counsel's application for fees in the amount of $3,805.02, including taxes and costs, for the period beginning March 1, 2008 through June 30, 2008. *See* Docket No. 37.

[2] The Debtor's Objection includes the following reasons she believes that the Fee Application should be denied:
    1.    She did not receive notice of the first fee application or an opportunity to object to that application.
    2.    Counsel failed to take appropriate action to prosecute objections to the claims of Bienes Properties LLC and Wachovia.
    3.    Counsel failed to get the funds on deposit in the Court registry released, knowing the funds belonged to a friend of the Debtor who loaned her approximately $32,000 of the money to enable her to redeem her house, instead wanting the funds to be released to the trustee for counsel's benefit.
    4.    Counsel failed to keep her adequately informed regarding the hearing on the trustee's motion to dismiss.
    5.    Fees charged for reviewing email correspondence were excessive.
    6.    Charges for photocopies should have been included as an overhead expense and not charged separately.
    7.    In general the fees are excessive and were not earned or deserved.

*See* Objection, Docket No. 93.

matter under advisement.  After considering the evidence presented at the final hearing, including the billing statements in support of the Fee Application, the Court finds, for the reasons set forth below, that a portion of the fees and costs charged must be disallowed.

FACTS AND PROCEDURAL HISTORY OF THE DEBTOR'S BANKRUPTCY CASE AND
THE LAW FIRM'S REPRESENTATION OF THE DEBTOR IN THE CASE

1. Ms. Fincher filed a voluntary petition under Chapter 13 of the Bankruptcy Code on May 8, 2008.   Before Ms. Fincher retained Hunt & Davis, P.C. (the "Law Firm") to represent her in her bankruptcy case, a foreclosure judgment had been entered against her, a foreclosure sale of her residence located at 2300 Cherry Tree Lane SW, Albuquerque, New Mexico (the "Residence") had taken place, and an order approving the foreclosure sale and report of the special master had been entered.

2. On June 1, 2004, in an action commenced in the Second Judicial District Court of the State of New Mexico, Case No. CV 2003-02127 (the "2003 Foreclosure Action"), a final default judgment was entered against the Debtor in favor of Marie Weingardt dba Servpro of NE Albuquerque in the amount of $3,844.27 plus interest thereon from June 1, 2004 at the rate of 8.75% per annum.  The judgment recited that Marie Weingardt was entitled to foreclose a mechanics lien filed against the Residence.

3. Bienes Properties, LLC ("Bienes") purchased the claim of Marie Weingardt dba Servpro of NE Albuquerque, including any right of redemption of that creditor relating to the Residence.  Weingardt dba Servpro of NE Albuquerque assigned her interest in the judgment in her favor to Bienes.  Bienes also purchased a claim of Middle Rio Grande Conservancy District ("MRGD") secured by the Residence, including any right of redemption of that creditor relating to the Residence.

4. World Savings Bank filed an action to foreclose its lien against the Residence in the Second Judicial District Court of the State of New Mexico, Case No. 2007-03555 (the "2007 State Foreclosure Action").

5. On November 28, 2007, a summary judgment was entered by default in the 2007 State Foreclosure Action, that granted judgment in favor of World Savings Bank in the amount of $178,352.05, including an unpaid principal balance of $156,221.31, accrued interest of $8,979.31, escrow advances of $5,729.77, attorneys' fees of $2,565.00, and other charges and costs totaling $4,856.10. The judgment provided that the judgment amount would bear interest at a variable rate, initially 8.060% per annum. The judgment further provided that Ashokol K. Kaushal was substituted as a defendant in place of Donald L. Shaffer and 4 Diamond Cattle Co., which held an interest in the Residence junior to the interest of World Savings.

6. Ashok K. Kaushal asserted a cross claim against the Debtor in the 2007 State Foreclosure Action to foreclose a lien against the Residence and joined Marie A. Weingardt and MRGCD as third party defendants.

7. Ashok K. Kaushal obtained a foreclosure judgment in his favor the 2007 State Foreclosure Action to foreclose liens against the Residence. A foreclosure sale of the Residence took place prior to March 17, 2008 in connection with foreclosure of the liens held by Kaushal. On March 17, 2008, an Order Approving Sale and Report of Special Master was entered in the 2007 State Foreclosure Action. The order provided that the bid of Ashok K. Kaushal in the amount of $50,000 be accepted, and that the amount bid be paid or satisfied as follows: (a) $540.54 to Kaushal for the costs of sale; (b) $25,519.04 be applied as a credit to Kaushal's judgment, and (c) $23,940.42 be paid into the registry of the state court. The $23,940.42 represented the amount of the bid in excess of the judgment in favor of Ashok K. Kaushal.

8. On or about April 8, 2008, notice was given of a second foreclosure sale of the Residence scheduled for May 8, 2008 at 10:00 a.m. in connection with foreclosure of the lien held by World Savings Bank.

9. Ms. Fincher first retained the Law Firm as her counsel on April 28, 2008. She retained the Law Firm to represent her in a chapter 13 case. The Law Firm was not retained to represent Ms. Fincher in the state court foreclosure actions.

10. Prior to her retention of the Law Firm and prior to commencement of her chapter 13 case, Ms. Fincher borrowed $38,769.45 from her friend Sylvia Meketi, and used those funds together with other funds to pay $50,000 into the registry of the State Court to redeem the Residence following the foreclosure sale held in connection with foreclosure of the lien held by Kaushal. Ms. Fincher believed that after redeeming the property, there would remain a surplus of $23,940.42 in the registry of the state court that would be promptly returned to her so she could pay those funds to Ms. Meketi in partial satisfaction of her loan to Ms. Fincher.

11. Ms. Fincher testified that Ms. Meketi was in dire need of the funds, and that both she and Ms. Meketi believed that a substantial portion of Ms. Meketi's loan to Ms. Fincher would be repaid promptly. However, Bienes filed an objection in the 2007 State Foreclosure Action to the disbursement of the funds in the state court registry to Ms. Fincher.

12. Because World Savings Bank's foreclosure sale was scheduled to take place on May 8, 2008, there was insufficient time for Ms. Fincher to take further action in the litigation to seek return of the $23,940.42 before her chapter 13 case was filed to stop World Savings Bank's scheduled foreclosure sale.

13. Ms. Fincher commenced her chapter 13 case on May 8, 2008 at 7:47 a.m., before World Savings Bank's foreclosure sale took place. Wachovia Mortgage FSB ("Wachovia ") acquired the claim of World Savings Bank.

14. Ms. Fincher's goal in her chapter 13 case was to keep her home. When she filed her chapter 13 case, Ms. Fincher was 39 monthly payments in arrears on her home mortgage payments.

15. Pursuant to a court order entered in this bankruptcy case on June 18, 2008, the $23,940.42 on deposit in the registry of the state court was deposited in the Law Firm's trust account. The order provided that the funds would remain on deposit pending further order of the Court.

16. By an order entered August 22, 2008, Ms. Fincher was authorized to spend up to $11,000.00 of those funds to purchase a vehicle. By an order entered March 12, 2009, Ms. Fincher was authorized to spend up to $2,500.00 of those funds for a survey of 2.54 acres of vacant land located next to the Residence (the "Vacant Property") and for maintenance of the Vacant Property. Pursuant to the terms of an order entered April 15, 2011, the remaining $11,282.63 on deposit in the Law Firm's trust account was transferred to the Chapter 13 Trustee.

17. Bienes filed a proof of claim in the amount of $5,316.31, consisting of the amount of the judgment in the 2003 Foreclosure Action in favor of its assignor, Marie Weingardt dba Servpro of NE Albuquerque, plus $1,322.04 of interest on the judgment amount accrued between June 1, 2004 and May 8, 2008 plus attorneys' fees in the amount of $150.00. *See* Proof of Claim No. 3 filed June 18, 2008. Bienes filed a second proof of claim in the amount of $2,323.17 based on its acquisition of the secured claim of MRGCD. *See* Proof of Claim No. 4 filed June 18, 2008. Wachovia, as assignee of the claim of World Savings Bank, filed a claim in the

amount of $198,646.56 based on the judgment in its favor in the 2008 Foreclosure Action. *See* Proof of Claim No. 5 filed June 20, 2008

18. On May 28, 2008, Ms. Fincher filed a chapter 13 plan. The plan proposed that Ms. Fincher would make monthly payments for the benefit of creditors in the amount of $175.00 for 36 months; would recover the Vacant Property that had been transferred to her mother pre-petition "to the extent necessary;" sell or refinance the Vacant Property; and pay the sale or loan proceeds to the Chapter Trustee for distribution under the terms of the plan. The Vacant Property was unencumbered.

19. Wachovia, the Chapter 13 Trustee, and the New Mexico Department of Taxation and Revenue objected to the plan.

20. The order confirming the plan, entered July 21, 2008, provided that if Ms. Fincher did not close on a sale of the Vacant Property by November 17, 2008 and bring current her acreages owed to Wachovia, the automatic stay would be terminated with respect to Wachovia and all other parties claiming a lien against the Residence to permit those parties to foreclose their liens. The confirmation order provided further that Ms. Fincher reserved the right to object to the claim of Wachovia. The confirmation order reflected an agreement between Ms. Fincher and Wachovia to resolve Wachovia's plan objection.

21. On November 14, 2008, Ms. Fincher filed an amended motion to modify the plan to extend the time until May 17, 2009 for her to close on a sale of the Vacant Property, on the grounds that zoning problems and the state of the economy had delayed the sale or refinance of the Vacant Property. Wachovia objected to the proposed plan modification. On March 18, 2009, a stipulated order was entered modifying the plan. Counsel for Ms. Fincher negotiated the terms of the stipulated order with counsel for Wachovia. Under that order, Ms. Fincher was

-6-

given until May 15, 2009 to bring current her arrearages owed to Wachovia, which totaled $66,020.27 as of March 23, 2008. The order further provided that the plan would not be modified further, and that the Debtor's failure to bring the arrearages current by May 15, 2009 would entitle Wachovia to relief from the stay to complete its foreclosure of its lien against the Residence upon the filing by Wachovia of an affidavit of default.

22. Counsel for Ms. Fincher repeatedly warned Ms. Fincher during the course of her chapter 13 bankruptcy case that if the Vacant Land did not sell within the required time, her chapter 13 case likely would be dismissed.

23. On May 19, 2009, Wachovia filed an affidavit of default stating that the arrearages owed it had not been brought current as required by the plan modification.

24. On March 18, 2011, Ms. Fincher filed an objection to the claim of Bienes.

25. Christopher Pierce and the Law Firm, on the one hand, and Ms. Fincher, on the other, agreed that Christopher Pierce and the Law Firm would reduce the fees to be requested in the first fee application by a total of $3,339.39 for such services. *See* Exhibit U. The total amount requested in the first fee application and approved by the Court was $3,500 plus costs and tax.

26. The Law Firm did some work to obtain information regarding claims as a result of Ms. Fincher's repeated demands, but did not engage in formal discovery or seek to set aside any of the state court judgments fixing claim amounts.

27. The Law Firm repeatedly advised Ms. Fincher that until the Vacant Land was sold and there was money to pay claims, it made no sense to do work to investigate claim amounts, prosecute objections to claims or seek to set aside state court judgments.

28. Ms. Fincher repeatedly asked the Law Firm to obtain a detailed, itemized breakdown of charges of World Savings Bank, including charges for late fees, insufficient funds fees. *See* Exhibits L, O, and P.

29. Ms. Fincher asked the Law Firm for information on the principals of "Bien Properties" and for information whether counsel for Bienes had a conflict of interest by also representing Ashok Kaushal. *See* Exhibits B and W.

30. On July 28, 2011, the Chapter 13 Trustee filed a motion to dismiss Ms. Fincher's chapter 13 case. Counsel for Ms. Fincher advised her that she had little chance of prevailing on an objection to the motion to dismiss. As instructed by Ms. Fincher, the Law Firm filed an objection to the motion to dismiss on her behalf.

31. On September 21, 2011, following a hearing, the Court entered on order providing that if Ms. Fincher did not convert her chapter 13 case to a case under chapter 7 by October 19, 2011, the bankruptcy case would be dismissed.

32. On September 27, 2011, Ms. Fincher filed a motion to dismiss her chapter 13 case.

33. On September 30, 2011, an order was entered dismissing the case.

## DISCUSSION

A. <u>The Parties' Positions</u>:

Ms. Fincher's principal objections to the Law Firm's fees are: 1) the Law Firm overcharged her for the work that was performed; 2) the Law Firm should have made more diligent efforts to recover the $23,940.42 that had been paid into the registry of the state court so that Ms. Fincher could repay her friend who loaned her the monies; 3) the Law Firm failed adequately to investigate the amount of creditor claims, particularly the claim of Wachovia; and

4) the Law Firm failed adequately to investigate whether Ashok Kaushal's attorney had a conflict of interest in its representation of Mr. Kaushal.  The Law Firm counters that:   1) the chapter 13 case was substantially more complicated than a typical chapter 13 case, and therefore required more work on the part of counsel, and the Law Firm substantially reduced its fees in this case;  2) it did not make sense for counsel to investigate and prosecute objections to claims unless the Vacant Land sold and funds were available to pay claims, that counsel repeatedly so advised Ms. Fincher, and that the Vacant Land never was sold;  3) because World Savings Bank had scheduled a foreclosure sale the chapter 13 case had to be commenced before the monies could be recovered from the state court registry for Ms. Fincher and her friend, in the bankruptcy case the friend only had an unsecured non-priority claim, and further,  Ms. Fincher herself spent all but $11,282.63 of those funds;  and 4) whether Mr. Kaushal's attorney had a conflict of interest in representing Mr. Kaushal was an issue to be raised by Mr. Kaushal not Ms. Fincher.

　　B.  Standards for Evaluating Fees

　　　　In Chapter 13 cases, attorneys who represent debtors are entitled to:

　　　　reasonable compensation . . . for representing the interests of the debtor in connection
　　　　with the bankruptcy case based on a consideration of the benefit and necessity of such
　　　　services to the debtor and the other factors set forth in this section.

　　　　11 U.S.C. § 330(a)(4)(B).

The other factors set forth in 11 U.S.C. § 330(a)(3) are:

　　　　(A) the time spent on such services;
　　　　(B) the rates charged for such services;
　　　　(C) whether the services were necessary to the administration of, or beneficial at the time
　　　　　　at which the service was rendered toward the completion of, a case under this title;
　　　　(D) whether the services were performed within a reasonable amount of time
　　　　　　commensurate with the complexity, importance, and nature of the problem, issue, or
　　　　　　task addressed;
　　　　(E) with respect to a professional person, whether the person is board certified or
　　　　　　otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The party requesting compensation from the estate bears the burden of demonstrating that the requested fees are reasonable.[3]

The starting point in assessing the reasonableness of requested fees charged by attorneys representing debtors in bankruptcy cases is the lodestar method.[4] Under the lodestar method, the fee is determined by multiplying the reasonable number of hours expended by the reasonable hourly rate.[5]

C. The Reasonableness of the Fees and Expenses Requested in the Fee Application

a) *The reasonableness of the hourly rates charged by the Law Firm in this bankruptcy case*

The hourly rates requested in the Fee Application are $200.00 for Chris Pierce, $150.00 for Leslie W. Maxwell, and $60.00 for work performed by paralegals. The Court finds that the

---

[3] *See In re Recycling Indus., Inc.* 243 B.R. 396, 402 (Bankr.D.Colo. 2000)(stating that "[i]t is well settled that the burden of proof as to the reasonableness of compensation is on the fee applicant.")(citing *In re Narragansett Clothing Co.,* 210 B.R. 493, 497 (1st Cir. BAP 1997)(remaining citation omitted).

[4] *See, Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)(stating that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *In re Miniscribe, Corp.,* 309 F.3d 1234, 1244 (10th Cir. 2002)(noting that the Tenth Circuit "has long applied the . . . lodestar factors to assess 'reasonableness' of attorneys' fees in a variety of contexts . . . and has also specifically determined that the test applies to attorney fee determinations under §330(a)(1)" and adopting the lodestar method as the appropriate measure for calculating reasonable compensation for a chapter 7 trustee). *See also, In re Yates,* 217 B.R. 296, 299 (Bankr.N.D.Okla. 1998)(noting in the context of an application for approval of a flat fee in by a Chapter 13 debtor's attorney, that "[a]s a general rule in bankruptcy cases, the lodestar method, namely the number of hours expended times customary hourly rate, is used to determine attorney fees.")(citation omitted). *But cf. In re Howell,* 226 B.R. 279, 281 (Bankr.M.D.Fla. 1998)(stating that "[r]outine Chapter 13 cases are not appropriate cases for the use of the lodestar method. Instead, they are much more susceptible to a standard rate or flat, fixed rate approach, based on all the relevant legal factors.").

[5] *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)(stating that the lodestar figure is "the product of reasonable hours times a reasonable rate"); *In re Reconversion Technologies, Inc.,* 216 B.R. 46, 52 (Bankr.N.D.Okla. 1997)(explaining generally that under the "lodestar" method, the "number of hours expended times a reasonable hourly rate, is used to determine attorney fees" such that "[t]he 'total number of hours reasonably worked on the case' is 'multiplie[d] ... by the reasonable hourly rate' ")(citing *In re Cent. Metal Fabrication, Inc.,* 207 B.R. 742, 748 (Bankr.N.D.Fla. 1997) and quoting *In re Cascade Oil Co.,* 126 B.R. 99, 103 (D.Kan. 1991)). *See also, In re Boddy,* 950 F.2d 334, 337 (6th Cir. 1991)(stating that the lodestar calculation is determined by "multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.")(internal quotation marks and citation omitted).

-10-

hourly rates requested in the Fee Application are reasonable. Section 330(a)(3)(F) directs the Court to consider the customary rates charged in the market place for similarly skilled attorneys who practice outside the area of bankruptcy.[6] Ms. Fincher did not contest the reasonableness of the hourly rates, and no evidence of hourly rates from other attorneys was presented to the Court. The Court, in its discretion, can rely on its own experience and knowledge of customary hourly rates in assessing whether an attorney's requested rate is reasonable.[7] Based on its own experience and knowledge of the hourly rates charged by chapter 13 practitioners in this district, the Court concludes that the hourly rates in the Fee Application are reasonable because they are commensurate with the customary rates charged by attorneys when representing debtors in chapter 13 cases in this district.[8]

    b) *The reasonableness of the time spent by the Law Firm in representing Ms. Fincher in this bankruptcy case*

In reviewing an attorney's fees for reasonableness, the Court need not slavishly critique each individual time entry,[9] but nevertheless must articulate specific reasons for its determination of the allowed fees and show its calculation.[10] The Court may also draw upon its own

---

[6] Section 330(a)(3)(F) provides, in relevant part:
    In determining the amount of reasonable compensation to be awarded . . . the court shall consider . . .
        (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
11 U.S.C. §330(a)(3)(F).

[7] *See Smith v. Freeman,* 921 F.2d 1120, 1122 (10th Cir. 1990)(noting that "[t]he establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area" (citation and internal quotation marks omitted) and that "[a] district judge can 'turn to her own knowledge' to supplement the evidence.")(quoting *Bee v. Greaves,* 910 F.2d 686, 689 n.4. (10th Cir. 1990)); *Recycling Indus.,* 243 B.R. at 404 n. 6 (noting that when there is no evidence of prevailing market rates, the court "may use other relevant factors, including its own knowledge, to establish the rate.")(citation omitted); *Lady Baltimore Foods, Inc. v. U.S. Foodservice, Inc. (In re Lady Baltimore Foods, Inc.),* 2004 WL 2192365 (Bankr.D.Kan. January 27, 2004)(unreported)(stating that the Court "may also use its own knowledge and experience in determining reasonableness")(citation omitted).

[8] *Cf. In re Romero,* 2010 WL 964209 at *2 (Bankr.D.N.M. Mar. 12, 2010)(unreported)(reducing hourly rate charged by attorney representing chapter 13 debtor to $200.00).

[9] *See In re Tahah,* 330 B.R. 777, 781 (10th Cir. BAP 2005)(acknowledging that "the analysis under §330 does not require a detailed review and discussion of the line by line entries.").

[10] *See In re Cain,* 356 B.R. 787, *7 (10th Cir. BAP 2007)(unreported)(stating that "[t]he court's order on attorney's fees must allow meaningful review and it must articulate the decisions it made, give principled reasons for those

-11-

experience with customary fees charged by bankruptcy attorneys in chapter 13 cases in this district to determine a reasonable fee.[11]

The Fee Application requests approval "for all services rendered by Attorney in the amount of $7,219.80" for the second application period. *See* Fee Application, p. 3. In reviewing the supporting invoices, it appears to the Court that some of the time spent on some tasks is excessive, not by a lot, but by a small margin. Over a three-year period of representation, these small amounts can add up to a more significant amount. Attorneys are required to exercise billing judgment in reviewing time entries, and to make billing adjustments when warranted.[12] "Not every hour or part of an hour spent by an attorney is 'billable' and it is incumbent on the attorney to exercise 'billing judgment' when submitting [fee] applications to the court." *In re Stromgberg,* 161 B.R. 510, 517 (Bankr.D.Colo. 1993). Here, while it may not have been abundantly apparent to the Law Firm at the time of each billing cycle that some reduction should be made in the exercise of billing judgment, it does appear to the Court that, over time, an adjustment is necessary to ameliorate the cumulative effect of marginally excessive billing.

---

decisions, and show its calculation.")(citing *Adams v. Mathis,* 752 B.R. 553, 554 (11th Cir. 1985)). *See also, Cascade Oil,* 126 B.R. at 107 (noting that "[a] conclusory statement on whether a fee is reasonable or unreasonable is generally not sufficient.")(citation omitted).

[11] *See In re Pryor,* 2007 WL 1073884 at *1 (Bankr.D.Md. Feb. 8, 2007)(reducing the allowed fees for chapter 13 debtor's counsel in reliance on the court's "own experience in examining literally thousands of cases that pass through the bankruptcy process"); *In re Burton*, 278 B.R. 645, 649-50 (Bankr. M.D.Ga. 2001) (stating, in connection with evaluation of attorneys' fees in a Chapter 13 case that "[t]he court may draw on its own experience with the present case and similar cases to determine a reasonable fee.")(citing *Citibank, N.A. v. Multiponics, Inc. (In re Multiponics, Inc.),* 622 F.2d 731 (5th Cir. 1980)). *See also, In re Spillane*, 884 F.2d 642, 647 (1st Cir. 1989)(affirming district court's reduction in approved hourly rate that was based on the district court's own experience); *In re Hammeken*, 2010 WL 2940801 at *1 (Bankr. D.Ariz. July 21, 2010)(unreported)(stating that "the court employs its own experience, both as an attorney and as a judge, to attorney fee applications.").

[12] *See In re Colorado-Ute Elec. Ass'n, Inc.,* 132 B.R. 174, 177 (Bankr.D.Colo. 1991)("In applying for fees, attorneys 'should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'")(quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-1940, 76 L.Ed.2d 40 (1983)); *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 583 (Bankr. D. Utah 1985)(law firms are expected to make billing adjustments to exclude time for unproductive efforts).

-12-

Various time entries include several tasks lumped together.[13] *See, e.g.,* Time entry on 07/17/2008: "telephone conference with trustee regarding confirmation order; telephone conference with client regarding affidavit and plan confirmation; telephone conference with trustee's office regarding same; e-mail confirmation order and affidavits to client – 0.70."[14] The total charged for the services described on the billing statements as lumped entries is at least $1,400.00. New Mexico Local Bankruptcy Rules require that all applications be accompanied by detailed billing statements that "itemize[e] all services provided, the time spent on each service, the charge for the service, the identity an hourly rate of each person providing each service." NM-LBR 2016-1.1. "Lumping" of tasks into one time entry does not appear to comply with the requirements of NM-LBR 2016-1.1. Lumping of time entries so that it is not possible to determine the amount of time attributable to each task is particularly inappropriate in the bankruptcy context because it impedes the Court's ability to assess the reasonableness of the time expended to perform each task. *See In re Recycling Industries, Inc.,* 243 B.R. 396, 406 (Bankr.D.Colo. 2000)(observing that "'lumping' is a 'practice universally disapproved by the bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together.'")(quoting *In re Leonard Jed Co.,* 103 B.R. 706, 713 (Bankr.D.Md. 1989), *amended by* 118 B.R. 338 (Bankr.D.Md. 1990), *on reconsideration,* 118 B.R. 339 (Bankr.D.Md. 1990)). On the other hand, because the reality is that a bankruptcy attorney may

---

[13] "'Lumping' is a term used in the bankruptcy world to describe a time entry that contains a description of several activities by an attorney with only a single time entry, as opposed to an entry that gives a separate time allotment for each activity." *In re Threadneedle Street, LLC,* 2012 WL 243765 at *5 (Bankr.D.Colo. Jan. 25, 2012).

[14] *See also* time entries on 07/15/2008, 07/18/2008, 09/10/2008, 11/13/2008, 01/19/2009, 02/09/2009, 04/02/2009, and 04/20/2009, 08/15/2011.

-13-

be dealing with several different matters during one telephone call or conference that "'could conceivably be the subject of a separate billing'" entry, it is not appropriate to impose upon counsel "unreasonable and unrealistic billing record requirements" to itemize each and every severable task in a separate entry. *In re Reconversion Technologies, Inc.,* 216 B.R. 46, 58 (Bankr.N.D.Okla. 1997)(quoting *In re Frontier Airlines, Inc.,* 74 B.R. 973, 976 (Bankr.D.Colo. 1987)).

With these competing policies in mind, the Court will disallow a total of $210.00 representing a 15% reduction of the lumped billing entries contained in the billing statements offered in support of the Fee Application.[15] The Court will also disallow 1.0 hour of time billed for attending the final hearing on the motion to dismiss held September 19, 2011. The Law Firm charged 2.10 hours of time at the rate of $200.00 per hour to attend the hearing; this amount is excessive. Accordingly, the Court will disallow an additional $200.00 from the total allowed fees for time billed in connection with the hearing.

In addition, the invoices attached to the Fee Application include charges for postage and photocopying. *See, e.g.,* Invoice from July 2008 reflecting photocopy charges of $20.85 and postage charges of $6.49. The number of pages and photocopied, and the amount charged per page is not reflected. Because compensation for photocopying expenses must be based on a reasonable cost,[16] and because the Court cannot discern from the Fee Application or the billing

---

[15] *Cf. Recycling Indus.,* 243 B.R. at 407 (stating that "when faced with lumped billing entries, [courts] have either: (1) denied the compensation requested for the specific time entry, or (2) globally adjusted all of the lumped time entries, thereby reducing the requested compensation therein[ ]" and taking a 5% reduction to lumped billing entries)(citing *In re Poseidon Pools of America, Inc.,* 180 B.R. 718, 750 (Bankr.E.D.N.Y. 1995)). *See also, Reconversion Technologies,* 216 B.R. at 58 (noting that when faced with lumped billing entries, courts will often reduce the fees by a fixed percentage, "or in the extreme disallow fees in their entirety.")(citation omitted).
[16] *See Reconversion Technologies,* 216 B.R. at 59 (denying, without prejudice, unsubstantiated copy fee); *In re Runnels Broadcasting Systems, LLC,* 2009 WL 4611447 at *5 (Bankr.D.N.M. Dec. 1, 2009)(unreported)(stating that "this Court has consistently disallowed undocumented copy charges in excess of 15 cents per page."). *See also, In re CF & I Fabricators of Utah, Inc.,* 131 B.R. 474, 494 (Bankr.D.Utah 1991)(stating that "[p]rofit is not a factor in capturing and reimbursing costs in a bankruptcy estate. 'Actual costs . . . are reimbursable . . . but not in amounts

-14-

statements the cost charged per page, the Court will disallow all photocopying charges in the amount of $73.67.[17]

Although the facts demonstrated that the Law Firm and Mr. Pierce agreed to reduce the fee by over $3,000 in connection with the first fee application, the total fees charged in connection with this chapter 13 case, even with the reduction, exceed $10,000.00. Ms. Fincher argued that she consulted with other bankruptcy attorneys who quoted her an estimated fee of $1500 for a chapter 13 case. Such a fee would be well below the range of fees typically charged by attorneys representing debtors in chapter 13 cases in New Mexico. After a careful review of the docket in this case, the papers filed of record, the exhibits, including the Law Firm's billing entries, and the testimony offered at the final hearing, the Court has determined that there were complicating factors present in this case that would justify a substantially higher fee than a typical chapter 13 case. However, overall, such complicating factors were not so significant as to justify legal fees in excess of $8,750.00, plus costs and applicable gross receipts taxes.[18] The Court, therefore, will allow $5,250.00 and disallow $1,416.00[19] of the $6,666.00 in fees charged in the second application period.

Finally, based on the testimony presented at the final hearing, the Court finds that it was reasonable for the Law Firm not to pursue claims objections until the Vacant Land sold because there were no other funds available from which to pay claims. The Law Firm and its client, Ms. Fincher, together formulated a chapter 13 plan that contemplated the sale of the Vacant Land as the best way to accomplish Ms. Fincher's goals. Ultimately the plan failed and the case was

---

which include any profit or mark up factor to the applicants.'")(quoting *In re Prairie Cent. Ry. Co.,* 87 B.R. 952, 960 (Bankr.N.D.Ill. 1988)).

[17] This figure includes tax on costs in the amount of $4.67.

[18] *See Tahah,* 330 B.R. at 781 (stating that "[t]he court may make a subjective judgment [as to the reasonableness of the fees under §330] based on the entire circumstances presented.")(citing *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1203 (10th Cir. 1986)).

[19] This figure includes the 15% reduction for lumped entries and the $200.00 reduction for excessive time billed in connection with the final hearing on the motion to dismiss.

-15-

dismissed, but the Law Firm nevertheless carried out its responsibilities in representing its client in this chapter 13 case and should be awarded reasonable compensation for its efforts.

CONCLUSION

Based on the foregoing, the Court concludes that the Fee Application should be granted, in part, and denied, in part. Total compensation, including fees, expenses, and applicable taxes, is allowed in the amount of $5,675.23.[20] The remainder of the $7,219.80 is disallowed. An order consistent with this memorandum opinion will be entered.

*[signature]*

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: April 5, 2012

COPY TO:

**Chris W Pierce**
Hunt & Davis, P.C.
Attorney for Debtor
2632 Mesilla St. NE
Albuquerque, NM 87110

**Leslie A. Fincher**
2300 Cherry Tree Lane SW
Albuquerque, NM 87105

**Kelley L. Skehen**
Chapter 13 Trustee
625 Silver Ave. SW
Suite 350
Albuquerque, NM 87102

---

[20] The breakdown of allowed fees, costs and expenses, is as follows:
    Fees: $5,250.00
    Costs: $ 38.83 (Postage)
    Gross receipts taxes on fees: $ 386.40
    **TOTAL: $5,675.23**